# NETTIE RESSMEYER v. ROLLAND JONES AND ANOTHER.
## ELLEN ROSHEIM v. SAME.[1]

June 13, 1941.

Nos. 32,820, 32,821.

*Sexton, Mordaunt, Kennedy & Carroll,* for appellant.

*Robert L. Palmer, Rice & Rice,* and *A. R. English,* for respondents.

[1]Reported in 298 N. W. 709.

LORING, JUSTICE.

Two actions, one by Nettie Ressmeyer as special administratrix of the estate of Donald H. Ressmeyer, and the other by Ellen Rosheim as special administratrix of the estate of Harriet Rosheim, to recover damages for their deaths, claimed to have been caused by the willful and wanton misconduct of the defendant Rolland Jones in operating an automobile owned by his father, the defendant Howard Jones. The cases arose out of the same facts and were consolidated and tried as one, with separate verdicts. Both cases were dismissed by the court as to Howard Jones. The jury returned verdicts for plaintiffs against Rolland Jones, who appeals from orders denying his alternative motions for judgment or a new trial. As a condition of denial of the motions, both plaintiffs consented to a reduction of their verdicts—in the case of Nettie Ressmeyer from $8,078.80 to $6,000, and in the case of Ellen Rosheim from $7,621.50 to $6,500.

December 3, 1939, about 1:30 p. m., Rolland Jones, Harriet Rosheim, and Donald H. Ressmeyer left Pipestone, Minnesota, in the Jones car for the purpose of taking Miss Rosheim to her home in Flandreau, South Dakota. An oiled road, which for most of the distance runs straight west, connects the two towns. At a point in South Dakota about nine miles west of Pipestone, a graveled road runs due north two miles, where it intersects with another graveled road which runs straight west into Flandreau. This graveled route had been used as a detour before work on the oiled road was completed in the fall of 1939. The detour runs over rolling country and has sharp dips or swales, five of which are present between the point where the two graveled roads intersect and the scene of the accident here involved, the bottom of the sixth dip. About 1,000 feet east of the scene of the accident the Jones car, in the bottom of the fifth dip, passed the car of Mr. and Mrs. Gothier, who testified that they were traveling 35 to 40 miles an hour and that the Jones car passed them at a rate they estimated to be between 70 and 80 miles an hour. It cut in close to the Gothier car and, swerving from one side of the road to the other, vanished

into its own dust. The Jones car went over the crest of the next hill, and as it went into the dip in which the accident occurred Rolland testified that the left rear side of the car went down and that the car swerved from one side of the road to the other. Close to the bottom of the dip the car went through the right-hand guardrail, tearing down four posts. It left the highway and landed 53 feet away against a cement abutment supporting the road in the dip, bounced and again hit the abutment 16 feet farther on, and finally came to rest in a pasture 48 feet from the abutment. Miss Rosheim died shortly after the accident, and Mr. Ressmeyer died the next day.

■ It is the contention of the appellant that there is no evidence to support a finding of willful and wanton misconduct on his part which justified a verdict against him under South Dakota Code, 1939, § 44.0362,[2] the so-called guest statute in effect in that state. The South Dakota court in Granflaten v. Rohde, 66 S. D. 335, 341, 283 N. W. 153, 156, interpreted the statute as follows:

"Where a driver intentionally does something in the operation of his car which he should not have done or there is an intentional failure to do something which he should have done under circumstances disclosing a conscious realization that injury is a probable (as distinguished from a possible) result of such conduct, the act ceases to be merely negligent and becomes wilful and wanton; it involves the affirmative elements of consciousness of one's conduct and not merely the negative element of negligence."

[2]"44.0362. No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

Courts have usually held that mere excessive speed is not sufficient upon which to base a finding of willful and wanton misconduct, but as we view the record there is abundant evidence in addition to excessive speed to justify the jury's finding. Indeed, excessive speed under some circumstances may be evidence of willful and wanton misconduct.

On the day previous to the accident, the appellant, in discussing with one of the witnesses a recent trip from St. Paul to Pipestone, bragged about the speed with which he had made it. Thereupon the witness admonished him that he should refrain from driving at such excessive speeds, and he thereupon discussed his speed over the road which he was accustomed to travel between Pipestone and Flandreau, South Dakota, and stated that the next time he drove over that road he would drive at 100 miles an hour and give his passengers "the thrill of a lifetime or else." On the day of the accident, he was seen approaching the scene of the accident at high speed. From this evidence the jury would have been justified in finding that he was driving at the rate of 80 miles an hour shortly before the place of accident was reached. Subsequent to the accident he admitted driving at that speed. Instead of taking the main, oiled-surfaced road to Flandreau, he turned off from that road about nine miles west of Pipestone and followed a narrower graveled road through rolling, undulating country, which gave his passengers somewhat the same effect as they would get on a Gargantuan roller coaster. Considering the condition of the road, as shown by the evidence, and the speed at which he was traveling, as well as his previously announced intention, we think the evidence amply justified a finding of conscious realization on his part that injury would probably result from his conduct. His attempt to account for the accident by claiming a blowout of a rear tire is not borne out by the evidence of the South Dakota sheriff who examined the tires after the accident. He found no holes in any tire, only an injury to a rim which allowed a portion of the inner tube to protrude. The jury were justified in believing that the rim was damaged when the car hit the abutment.

The appellant has discussed Michigan cases relative to the Michigan statute which was subsequently adopted by the legislature of South Dakota, but we think that the above quoted statement of the law as laid down by the South Dakota court covers the situation and justifies the jury's finding.

■ Appellant also contends that there was error in admitting evidence of the speed of a car which traveled on the gravel road in the direction of Flandreau at about the same time appellant made the fatal trip. The contention is that the car was not identified as appellant's car. It is true that the identification is not satisfactory, but the time was identified as approximately that at which appellant was driving. No other car was seen to travel in that direction at the speed the Gothiers said appellant was traveling. While we should have been better satisfied if appellant's objection to this evidence had been sustained, we do not, in the light of the other testimony, deem the ruling to be so prejudicial as to require a new trial. The physical facts at the place of accident showed conclusively that the car had been traveling at terrific speed. How fast it traveled at the points where these witnesses had seen the speeding car was of little moment in the face of these facts.

■ Nor do we consider the verdicts as reduced to be so large as to indicate passion or prejudice. The value of these young people to their parents cannot be precisely weighed. The only element relied upon by appellant to sustain the claim of passion or prejudice is the size of the verdicts. We think they do not indicate passion or prejudice.

Orders affirmed.